UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| IN RE: DEEPWATER HORIZON BELO CASES<br><br>This Document Relates to:<br> *Lester Jenkins,* 5:19cv260<br> *Dwight Siples,* 5:19cv310<br> *Kenneth Davenport,* 5:18cv245<br> *Michael Moulder,* 5:19cv12 | Case No. 3:19cv963<br><br>Judge M. Casey Rodgers<br>Magistrate Judge Hope T. Cannon |

## ORDER

Before the Court is the Order and Report and Recommendation of the Magistrate Judge dated December 15, 2022, ECF No. 570 (Master Docket), in the above-named Back-End Litigation Option ("BELO") cases, recommending the exclusion of Plaintiffs' general causation experts under Federal Rule of Evidence 702 and *Daubert*;[1] striking a supplemental report; and recommending the grant of summary judgment in favor of Defendants BP Exploration & Production, Inc. and BP America Production Company (collectively "BP" or the "BP Defendants").[2] The

---

[1] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

[2] The Court assumes the parties' familiarity with the BELO context and basic facts of the Deepwater Horizon oil spill and resulting multidistrict litigation, which resolved in part through a Medical Benefits Class Action Settlement Agreement ("Settlement"). The Settlement provided a claim payment scheme for all class members who suffered an illness that was diagnosed by the Settlement cutoff date of April 16, 2012. The Settlement also established a procedure to allow certain medical benefits class members to bring a back-end lawsuit (a BELO suit) to recover for later-manifested physical conditions ("LMPCs") first diagnosed after the settlement date of April 16, 2012, and which are claimed to have been caused by exposure to chemicals originating from the spill and/or cleanup response activities. The multidistrict litigation background and the context

Plaintiffs have filed timely objections pursuant to Title 28, United States Code, Section 636(b)(1), *see* ECF Nos. 577 & 578, which are ripe for consideration.

1.

Briefly summarized, the operative facts reflect that the above-named Plaintiffs suffer from chronic ocular and sinus diseases, which they contend were caused by exposure to toxic oil-based chemicals when they engaged in cleanup work along the Gulf Coast of Florida after the *Deepwater Horizon* oil spill.[3] Because these conditions were diagnosed after the cutoff date for claims eligible for a settlement payment under the Deepwater Horizon Medical Benefits Class Action Settlement Agreement, they are deemed "later-manifested physical conditions" ("LMPCs") under the terms of the settlement, which means Plaintiffs had to bring the instant BELO suits to recover compensation for their injuries, *see supra* Note 2.

To succeed in this toxic tort context, Plaintiffs must show through expert testimony that a chemical or mixture of chemicals from the oil spill caused their LMPCs. *See In re Deepwater Horizon BELO Cases*, No. 3:19-963, 2020 WL

---

and facts of the cases at issue are adequately laid out within the Report and Recommendation, which is adopted herein by reference, and thus need not be stated in full in this Order.

[3] Plaintiffs Kenneth Davenport and Michael Moulder complain of ocular conditions (Keratoconjunctivitis Sicca and chronic eye irritation/chronic conjunctivitis), and Plaintiffs Lester Jenkins and Dwight Siples complain of a sinus condition (chronic sinusitis).

6689212 (N.D. Fla. Nov. 4, 2020), *aff'd sub nom., Griffin v. BP Expl. & Prod.*, 2022 WL 104243 (11th Cir. Jan. 11, 2022).  This causation inquiry requires a showing of both general causation and specific causation.  *See McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1239 (11th Cir. 2005).  In an effort to structure the expert work in a way that would present the causation issues efficiently and cost-effectively, the Court selected eight test cases and established a bifurcated procedure by which the general causation issue would be resolved first.[4]  Plaintiffs designated experts on the issue of general causation—Dr. Gina Solomon, Dr. David Carpenter, Dr. Michael Freeman, and Dr. Ranajit Sahu, and BP has challenged their reliability and helpfulness under Rule 702 and *Daubert* and moved for summary judgment.[5]  Plaintiffs responded with expert supplemental declarations, including a supplemental report by Dr. Freeman, and requested an evidentiary hearing.  The

---

[4] Of the eight test cases selected, the above-named cases remain and are represented by the Downs Law Group.  All other BELO cases represented by the Downs Law Group that involve the same categories of alleged injuries (ocular and sinus) were stayed by consent of the parties pending resolution of the general causation issue.  Those plaintiffs also agree to be bound by the Court's ruling in the test cases, after appeal if any, and they agree that their cases should be dismissed with prejudice and without further litigation if the general causation issue is resolved against them.  *See* ECF Nos. 342, 348 (Master Docket).

[5] Plaintiffs also designated Dr. James J.J. Clark, whom they withdrew for purposes of general causation at the oral argument, and Dr. Robert Cykiert and Dr. David Greene, who offered an expert opinion on diagnosis.  The Magistrate Judge found BP's motions to exclude these witnesses moot in light of the ultimate decision that summary judgment should be granted in favor of BP for the lack of proof on general causation.

Case No. 3:19cv963-MCR-HTC

undersigned referred the *Daubert* and summary judgment motions to the Magistrate Judge for a report and recommendation.

The Magistrate Judge denied the request for a hearing but allowed extensive oral argument, following which she entered a detailed and lengthy Report and Recommendation ("R&R). The R&R reflects a thorough gatekeeping analysis under Rule 702 and *Daubert*. In the R&R, the Magistrate Judge concluded that the Plaintiffs failed to support their general causation contention with a scientifically reliable expert opinion. The Magistrate Judge rejected Plaintiffs' overarching contention that their experts should not be required to identify a harmful level or dose of exposure at which any particular chemical within the oil is capable of causing the LMPCs at issue, finding the argument misplaced and unsupported by law. Ultimately, after considering each expert's opinion in turn, the Magistrate Judge recommended granting the *Daubert* motions and excluding each expert's opinion as unreliable and/or unhelpful. Among the deficiencies noted were the failure to identify a reliable statistically significant association in the literature for the chronic LMPCs claimed, as opposed to identifying only self-reported symptoms or acute conditions; the failure to fully evaluate or explain the study limitations or to explain how the expert's application of the Bradford Hill criteria supported a causal inference for the LMPC's claimed in light of, or despite, the study limitations; the

Case No. 3:19cv963-MCR-HTC

failure to identify or discuss a harmful threshold level of exposure or dose capable of causing the LMPCs at issue; and the failure to consider the background risk of disease. The Magistrate Judge also granted the motion to strike Dr. Freeman's supplemental report, and portions of his supplemental declaration referring to it, as untimely disclosed opinions. Plaintiffs object, and BP has responded.

2.

When reviewing a report and recommendation, the Court must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3) (similarly requiring de novo review of any part of the Report that that is "properly objected to"). Objections must be sufficiently specific to warrant *de novo* review. *See Macort v. Prem, Inc.*, 208 F. App'x 781, 783-85 (11th Cir. 2006). The district court judge "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge," 28 U.S.C. § 636(b)(1). Absent objection or on partial objection, the Court need only satisfy itself that there is "no clear error on the face of the record" as to those unobjected portions in order to accept the recommendation. *See Macort,* 208 F. App'x at 784 (quoting *Diamond v. Colonial Life & Accident Ins.*, 416 F.3d 310, 315 (4th Cir. 2005)); *see also* Fed. R. Civ. P. 72(b) (1983 advisory committee note).

The Court has carefully considered the R&R and the Plaintiffs' objections, as well as BP's response and the record under *de novo* review, and after doing so, concludes that the R&R is correct as a matter of law and is due to be adopted.[6] With regard to each expert, the Magistrate Judge applied well-settled principles of law, as set forth by the Eleventh Circuit and consistent with this Court's earlier *Daubert* ruling, *In re Deepwater Horizon BELO Cases*, 2020 WL 6689212. She provided a detailed evaluation of each expert report, considered together with the explanations offered during the respective expert's deposition testimony, and accurately identified flaws in the underlying studies that the experts acknowledged existed, but which they did not bother to analyze in making their ultimate general causation conclusions.[7] Plaintiffs criticize the Magistrate Judge for weighing evidence that should instead be presented to and weighed by a jury, but it is the Court's unique

---

[6] The Court rejects BP's argument that because the *Daubert* motions are not dispositive, they should be reviewed under the deferential clear error review. The undersigned specially referred the *Daubert* motions to Magistrate Judge Cannon for the preparation of a report and recommendation, and has reviewed it *de novo*.

[7] The opinion of Dr. Ranajit Sahu was challenged and excluded only on helpfulness grounds. He identified chemicals of concern, but, as the Magistrate Judge found, he did not identify any particular chemical that was present within a toxic threshold range that could cause the LMPCs at issue. Plaintiffs object in part on grounds that Dr. Sahu should not be excluded for not providing a general causation opinion because his function was to supply only "one piece of the puzzle." But Plaintiffs have not identified any expert who relied on his report to form a general causation opinion, and standing alone, his opinion is not helpful. Therefore, the objections are overruled.

Case No. 3:19cv963-MCR-HTC

obligation as gatekeeper to engage in a searching examination for scientific reliability and helpfulness. After a thorough review, the undersigned agrees that the expert opinions are unreliable and unhelpful for the reasons stated in the R&R.

The Court also rejects Plaintiffs' contention that by requiring the identification of a chemical and a threshold amount above which the adverse result occurs, the Magistrate Judge used too rigid an analysis or applied a standard inconsistent with the Court's decision in *Abilify*. Certainly "the test for reliability is 'flexible' and courts have 'broad latitude' in determining both how and whether this requirement is met," *In re Abilify (Aripiprazole) Prod. Liab. Litig.*, 299 F. Supp. 3d 1291, 1305 (N.D. Fla. 2018) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141-42 (1999)), but this call for flexibility reflects the reality that expert testimony may arise in a myriad of circumstances. While integral to the Court's gatekeeping function, this "flexibility" standard is no license to skirt well-settled principles that require an expert in a toxic tort case to establish a causal link through a primary methodology, reliably applied. The bottom line is that in order "to carry the burden in a toxic tort case, a plaintiff must demonstrate the levels of exposure that are hazardous to human beings generally as well as the plaintiff's actual level of exposure to the defendant's toxic substance before he or she may recover." *McClain*, 401 F.3d at 1241 (internal marks omitted). In *Abilify*, the toxin at issue was a known

prescribed pharmaceutical drug, contrary to this case, which involves exposure to various spill-related chemicals in unknown combinations or levels.  In this case, it is not too rigid to require that the toxin itself be identified, individually or in a given combination, and shown to be harmful above a particular threshold.  *See McClain*, 401 F.3d at 1241.

Moreover, when epidemiology is the primary methodology, it requires a statistically significant association in the literature and a causation opinion made on evaluation of that literature in consideration with the Bradford Hill criteria, which includes evaluation of the dose-response relationship.  Contrary to Plaintiffs' objection, this decision is not inconsistent with *Abilify*, in which the Court acknowledged that "[i]n the Eleventh Circuit, the use of dose-response evidence as a 'primary' means of establishing causation generally requires a scientifically reliable showing of a correlation between dosage and disease, the minimum dose at which adverse effects are seen and the dose at which a substance is lethal."  299 F. Supp. 3d at 1330–31 (citing *McClain*, 401 F.3d at 1241-43).  Although, as Plaintiffs argue, the lack of "any controlled, experimentally derived evidence of a dose-response relationship" was deemed not fatal to the general causation opinions in *Abilify*, Plaintiffs overlook that those opinions were supported by reliable on-point epidemiology, case studies on dose-relationship, and thorough Bradford Hill

Case No. 3:19cv963-MCR-HTC

evaluations. As a result, despite the fact that the case studies on dose-relationship in *Abilify* were found to lack the intrinsic reliability of a primary methodology, they were considered relevant and admissible as a *secondary* methodology supportive of the general causation opinions. *Id*. As noted by the Court in its *Abilify* decision, while non-epidemiological evidence may be used to prove causation, "where epidemiology is lacking, 'the nature of the other evidence . . . becomes that much more important, and [a] court's consideration of such evidence and the methodologies used must be that much more searching." *Id.* at 1307 (quoting *Kilpatrick v. Breg, Inc*., 613 F.3d 1329, 1337 n.9 (11th Cir. 2010)). Here, there is no reliable epidemiology or thorough Bradford Hill analysis to support the general causation conclusions reached by these experts, and therefore, a dose-response relationship would have to be established as a primary methodology. It was not.

Plaintiffs also urge the Court, without legal support, to focus on the complex toxic *mixture* of chemicals from crude oil spills, rather than requiring the identification of a particular chemical component in the general causation analysis. Plaintiffs argue that their experts relied on studies using "state-of-the-art industrial hygiene approaches," and yet "[i]t is not feasible to deconstruct and reassemble complex exposure situations" such as this. ECF No. 577–1 at 21. That very concession, however, is fatal. While the result may seem harsh to the Plaintiffs, the

guiding principle in matters of legal causation is that "[t]he courtroom is not the place for scientific guesswork, even of the inspired sort. Law lags science; it does not lead it." *Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183, 1203 (11th Cir. 2010) (quoting *Rider v. Sandoz Pharms. Corp.*, 295 F.3d 1194, 1202 (11th Cir. 2002)).

Plaintiffs further argue that the experts were deprived of an opportunity to explain their reasoning because the Magistrate Judge denied an evidentiary hearing. The Court disagrees. An evidentiary *Daubert* hearing is discretionary, *see United States v. Esformes*, 60 F.4th 621, 635–36 (11th Cir. 2023), and on *de novo* review, the undersigned agrees that no hearing was necessary in this case. The experts were allowed to make a thorough record through their reports, their deposition testimony, and supplemental declarations, and the Magistrate Judge held a full day of oral argument.

Absent reliable expert general causation testimony, the motion for summary judgment must be granted. The Court overrules the objections and adopts the Report and Recommendation of the Magistrate Judge.

2.

Plaintiff also objects to the Magistrate Judge's order striking Dr. Freeman's supplemental report and those portions of his supplemental declaration that

Case No. 3:19cv963-MCR-HTC

referenced the supplemental report, pursuant to Fed. R. Civ. P. 37(c)(1). When reviewing a nondispositive order of a magistrate judge, this Court will "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A). The clear error standard of review is "highly deferential." *Holton v. City of Thomasville Sch. Dist.*, 425 F.3d 1325, 1350 (11th Cir. 2005). "A finding is 'clearly erroneous' only if, despite evidence to support it, 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'"[8] *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, No. 3:19md2885, 2022 WL 2436843, at *1 (N.D. Fla. Mar. 11, 2022) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). The "contrary to law" standard considers whether the magistrate judge's order "fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Malibu Media, LLC v. Doe*, 923 F. Supp. 2d 1339, 1347 (M.D. Fla. 2013) (quoting *Botta v. Barnhart*, 475 F. Supp. 2d 174, 185 (E.D.N.Y. 2007)).

---

[8] Several courts, including the Eleventh Circuit, have commented that a ruling is clearly erroneous only when the challenged decision is not "just maybe or probably wrong" but instead strikes the Court "with the force of a five-week-old, unrefrigerated dead fish." *Cox Enterprises, Inc. v. News-J. Corp.*, 794 F.3d 1259, 1272 n.92 (11th Cir. 2015) (quoting *Parts & Elec. Motors, Inc. v. Sterling Elec. Inc.*, 866 F.2d 228, 233 (7th Cir. 1988)); *see also TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009) (citing cases). This decision comes nothing close to meeting that standard.

Case No. 3:19cv963-MCR-HTC

On careful review, the Court agrees that the new opinions of Dr. Freeman offered in his supplemental report were not timely disclosed and therefore were properly stricken, along with portions of the supplemental declaration that rely on that report. The Court finds no clear error or misapplication of the law.

Accordingly:

1. The objections are **OVERRULED** and the Report and Recommendation of the Magistrate Judge dated December 15, 2022, ECF No. 570 (Master Docket), filed in the individual cases as follows:

> *Lester Jenkins,* 5:19cv260, ECF No. 56
> *Dwight Siples,* 5:19cv310, ECF No. 57
> *Kenneth Davenport,* 5:18cv245, ECF No. 65
> *Michael Moulder,* 5:19cv12, ECF No. 95

is **ADOPTED** and incorporated by reference in this Order.

2. BP's *Daubert* motions to exclude the opinions of Dr. Ranajit Sahu, ECF No. 459; Dr. Gina Solomon, ECF No. 466; Dr. David Carpenter, ECF No. 468; and Dr. Michael Freeman, ECF Doc. 469 (Master Docket), also filed in the individual cases as follows:

> *Lester Jenkins,* 5:19cv260, ECF Nos. 42, 44, 46
> *Dwight Siples,* 5:19cv310, ECF Nos. 43, 45, 48
> *Kenneth Davenport,* 5:18cv245, ECF Nos. 53, 56, 57
> *Michael Moulder,* 5:19cv12, ECF Nos. 83, 86, 88

are **GRANTED**.

Case No. 3:19cv963-MCR-HTC

3. BP's motion for summary judgment, ECF No. 470 (Master Docket), filed in the individual cases as follows:

>   *Lester Jenkins,* 5:19cv260, ECF No. 47
>   *Dwight Siples,* 5:19cv310, ECF No. 47
>   *Kenneth Davenport,* 5:18cv245, ECF No. 58
>   *Michael Moulder,* 5:19cv12, ECF No. 87

is **GRANTED**.

4. The Clerk is directed to file a copy of this Order in each individual test case named in the caption and enter judgment in favor of the BP Defendants, tax costs against the Plaintiffs, and close the files.

5. Based on this ruling, the Court will dismiss with prejudice each case that was stayed and in which the plaintiff consented to be bound by this decision. The Downs Law Group is directed to file a list of cases subject to this order within fourteen (14) days.

**DONE AND ORDERED** this 30th day of March 2023.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**